IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JERRY JOHNSON,

        Petitioner,

v.                                   Civil Action No.     1:12cv45
                                      Criminal Action No.   1:07cr104-5

UNITED STATES OF AMERICA,

        Respondent.

## REPORT AND RECOMMENDATION

On March 15, 2012, the *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. On June 12, 2012, the Government filed a Motion for Leave to File Response Out of Time, which was granted, and a Response to Petitioner's Motion. Petitioner filed a Reply on August 10, 2012.

## I. BACKGROUND

### A. *Conviction and Sentence*

On January 22, 2008, Petitioner pleaded guilty to aiding and abetting the distribution of cocaine base, also known as "crack," in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2. On March 27, 2009, in a variance from the advisory guidelines, the District Court sentenced Petitioner to five years of probation. Then, on November 12, 2009, while on probation, Petitioner was arrested by officers of the Morgantown Police Department and charged with attempted abduction, thereby violating a mandatory condition of his probation that he not commit another federal, state or local crime. Petitioner also failed to notify his probation officer within 72 hours that he was arrested by law enforcement, thereby violating another standard condition. Finally,

Petitioner failed to report for drug testing on November 19, 2009, thereby violating a special condition of his probation. The United States then filed a Petition for revocation of Petitioner's probation, and a final revocation hearing was held before the District Court on April 26, 2010. At the final revocation hearing, the District Court advised Defendant that although the worksheet indicated a sentence of 21 to 27 months of imprisonment, the Court could impose the original sentence as calculated under the advisory guidelines, which was between 151 and 188 months of imprisonment. On April 27, 2010, at Petitioner's sentencing hearing, Petitioner was found to be a career offender and was sentenced to 151 months of imprisonment.

### B. Direct Appeal

Petitioner filed a direct appeal of his conviction and sentence asserting that the sentence imposed was plainly unreasonable. On May 4, 2011, the Fourth Circuit Court of Appeals affirmed the petitioner's conviction and sentence in an unpublished *per curiam* opinion. *See United States v. Johnson*, 427 Fed. Appx. 276, 2011 WL 1666695 (4th Cir. May 4, 2011). On October 31, 2011, the United States Supreme Court denied certiorari. *See Johnson v. United States*, 132 S. Ct. 530 (2011).

### C. Federal Habeas Corpus

In his federal habeas petition, Petitioner raises the following grounds for relief:

(1) His state attorney was ineffective in advising Petitioner to enter two guilty pleas in 2003

(2) His federal attorney was ineffective for failing to investigate his criminal history and thereby caused Petitioner to be sentenced as a career offender; and

(3) Actual innocence of the qualifying offenses that form the basis for the application of the career offender guidelines.

2

## II. ANALYSIS

### A. *Petitioner's Burden of Proof*

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States*, 2006 WL 36859 *2 (E.D.Va. Jan. 4, 2006).

### B. *Waiver of Right to File 2255 in the Plea Agreement*

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." *Id.* "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005).

In *United States v. Attar*, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." *Id.* After upholding the general validity of a waiver-of-appeal-rights

3

provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. *Id*. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." *Id*. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." *Id*.

Subsequently, in *Lemaster*, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. *Id*. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." *Id*. at n. 2.

Based on these cases, the majority of petitioner's claims are barred by his waiver of these rights in his plea agreement. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. *Attar*, 38 F.3d at 732 (holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional

4

limitations").

Therefore, when reviewing claims in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. Concerning this issue, the Fourth Circuit has said that

> [t]he validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy–specifically, whether the district court questioned the defendant about the appeal waiver–the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

*United States v. Blick*, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. *Id*. If the Court finds that the waiver is valid, any claims arising out of actions prior to the plea agreement are barred by the waiver.

Paragraph 11 of the Plea Agreement states, in pertinent part:

> The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255.

(Pl. Agr. 3, 4.) Further, during the Rule 11 plea hearing, Judge Keely entered into the following colloquy with the petitioner:

> THE COURT: Okay. As I recall Mr. Curry saying last week you were in a bit of shock, sticker shock over the exposure that you might have to a career offender enhancement, correct?

5

THE DEFENDANT: Yes ma'am.

THE COURT: Because that takes your sentence to much, much higher than what you would be exposed to at a base offense level of 14, correct?

THE DEFENDANT: Yes ma'am.

THE COURT: Okay. Do you understand that the only way career offender enhancement can apply to your case is based on your prior criminal history?

THE DEFENDANT: Yes ma'am.

THE COURT: And that that prior history, as I have said, has to include either prior fel--drug felony convictions or prior crimes of violence or both?

THE DEFENDANT: Yes ma'am.

THE COURT: Okay. So in pleading guilty to Count 11 here today, although there's a minimal amount of drugs involved, there is a criminal history issue which could affect your sentence dramatically and I want to make sure before you go any further that you understand that.

THE DEFENDANT: Yes ma'am.

THE COURT: Okay. Now in paragraph eleven you're agreeing to waive, which means to give up your appellate and collateral attack rights, and I'll explain that further in a minute, for any sentence with a base offense level of 14 or lower. That means that even if you get that career offender enhancement, if your base offense level is a 14, which we pretty well know it is, you're giving up your right to appeal to a higher court the decision I make about your sentencing. Do you understand that?

THE DEFENDANT: Yes ma'am.

THE COURT: Okay. Now here's what appellate rights mean. Appellate rights mean your right to go to a higher court above me, which is located in Richmond, Virginia and to say to them--it's a three judge panel usually, Judge Keeley made a mistake in my case and you should reverse her and tell her to lower my sentence.

> THE DEFENDANT: Yes ma'am.
>
> THE COURT: That's what you're giving up. When you give up your collateral attack rights it means you're giving up your right to file a petition for writ of habeas corpus, which is your right to come back before me and say, Judge, I think you made a mistake in my case; here's new evidence or here's a new case that changes the law or here's a reason why I think this was constitutionally prohibited and you should change your mind and reduce my sentence.
>
> THE DEFENDANT: Yes ma'am.
>
> . . .
>
> THE COURT: Okay. And just to remind you, as I said earlier, under paragraph eleven you're giving up your right to appeal any sentence with a base offense level of 14 and you're giving up your right to file a habeas petition at any level actually under the terms of the plea agreement. Do you understand that?
>
> THE DEFENDANT: Yes ma'am.

The last question came after a question asked by the defendant about the appeal, which he declared to understand, and his attorney elaborated that they discussed and that his client understood the ramifications.

Furthermore, Petitioner stated that he was not under the influence of any drugs, nor was he suffering from any hearing impairments or mental illnesses that would prevent him from entering a valid plea. The court reviewed the terms of the plea agreement, and Petitioner understood that the agreement was the complete agreement, had reviewed its terms with his attorney, was pleading guilty because he was indeed guilty, and agreed there were no other promises or representations inducing his guilty plea.

The Petitioner agreed that the court had the authority to depart from any sentence

recommended under the guidelines and impose either a longer or shorter sentence, that if the sentence imposed upon him was longer than he hoped or expected he would still be bound by his guilty plea and may not withdraw it, nor could he appeal such sentence. The district court concluded that the plea was freely and voluntarily made and that Morris had full knowledge of its consequences, and accepted the plea.

Because the Petitioner knowingly and intelligently waived his right to collateral attack, all claims based on actions prior to the plea agreement will not be reviewed. The Court will address only Petitioner's claim of ineffective assistance of counsel after the plea was entered.

## C.     *Remaining Claim: Ineffective Assistance of Counsel*

In this claim, Petitioner asserts that counsel was ineffective for failing to investigate his criminal history and thereby caused Petitioner to be sentenced as a career offender. When a petitioner brings an ineffective assistance of counsel claim, counsel's conduct is measured under the two part analysis in *Strickland v. Washington*, 466 U.S. 668 (1984): First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

In order to demonstrate prejudice, the defendant must show that but for his attorney's errors, the result of the proceeding would have been different. *Id.* Error by counsel which falls short of the constitutional ineffectiveness standard does not constitute cause, notwithstanding that the error may arise from inadvertence, ignorance or strategic choice. *Murray v. Carrier*, 477 U.S. 478 (1986);

8

*Griffin v. Aiken*, 775 F.2d 1226 (4th Cir. 1985) *cert. denied*, 478 U.S. 1007 (1986).

Further, in evaluating a post guilty plea of ineffective assistance of counsel, statements made under oath affirming satisfaction with counsel are binding, absent clear and convincing evidence to the contrary. *See Blackledge v. Allison*, 431 U.S. 63, 75-76 (1977). A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: "he must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1998), *cert. denied*, 488 U.S. 843 (1988).

Petitioner argues his counsel was ineffective because he failed to investigate his criminal history, thus causing him to be sentenced as a career offender. However, the record does not support this. The plea transcript alone shows that the Petitioner, and his counsel, were well aware of the prior convictions and that they formed the basis for career offender enhancement. Moreover, petitioner claims that counsel advised him not to argue against the prior convictions during sentencing. This was a strategy that did nothing to alleviate the fact that the petitioner had two qualifying offenses, excluding the two state court convictions he contests–five in all–which formed the basis for his sentence.

The Fourth Circuit faced a similar set of circumstances in *United States v. Foster*, 68 F.3d 86 (4th Cir. 1995)**,** where a *habeas* petitioner claimed his counsel was ineffective by assuring him that his sentence would not be enhanced by career offender eligible convictions, and by failing to appeal his conviction. The Court affirmed the district court's denial of the petition finding that counsel did not fall below the *Strickland* standard. In the instant case, not only did counsel, and the sentencing judge, inform Petitioner of the implications of career offender enhancement, which

Petitioner acknowledged he understood, counsel also appealed the sentence up to the United States Supreme Court.

In sum, the Court cannot find that counsel for the petitioner was deficient under *Strickland*. Even taking the allegations by the petitioner as true that counsel failed to investigate his past, and that those actions fall below an objective standard, petitioner still cannot meet the second prong of *Strickland*. Specifically, he cannot show prejudice by this failure because nothing the attorney could have done would have wiped out the fact that the petitioner had convictions, in addition to the two he claims were unconstitutional, that made him eligible for career offender sentencing.

### III. CONCLUSION

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING** this case with prejudice.

Within ten (10) days after being served with a copy of this Recommendation, any party shall file with the Clerk of the Court written objections identifying those portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation

10

to counsel of record via electronic means.

DATED September 25, 2012               /s/ *James E. Seibert*
                                       JAMES E. SEIBERT
                                       UNITED STATES MAGISTRATE JUDGE